UNITED STATES of America, Appellant,

v.

Douglas Alan MOSTROM, Appellee.

No. 93–3703.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 11, 1993.

Decided Nov. 29, 1993.

---

Patrick J. Reinert, Asst. U.S. Atty., Cedar Rapids, IA, for appellant.

Russell H. Schroeder, Jr., Charles City, IA, for appellee.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge and MAGILL, Circuit Judge.

PER CURIAM.

The Government has appealed a direction of the district court that the defendant who has been convicted of drug offenses and sentenced to sixty-three months of incarceration continue on pre-trial release until noon, November 29, 1993. At that time, the defendant must surrender himself at the place designated for his incarceration.

The trial court's order, included in the sentencing transcript, stated:

The defendant and his attorney will work closely with Mr. Reinert and the probation officers, and we'll—as soon as there's been a place designated for him to go, we'll alert him to that. And he will show up there on November 29, 1993, at high noon or before.

Tr. at 21.

The Government has requested an expedited appeal and we grant that request. The Government has filed a brief supporting the appeal, the defendant has filed a short response and the trial court has filed an order supplementing the record.

The trial court's order as pertinent gives the following reasons for the action taken:

In *United States v. Carr*, 947 F.2d 1239, 1240 (5th Cir.1991), the Fifth Circuit held that § 3145(c) relief is *not* limited to reviewing courts; district courts may release a defendant who has been convicted.

This court has consistently been persuaded that it has the authority to order release under § 3145(c) and agrees with the reasoning of the Fifth Circuit Court of Appeals. In the instant case the court ruled at sentencing that the defendant was not likely to flee and was not a danger to any person or the community if allowed to self surrender. Therefore, this defendant meets the conditions of release set forth in 18 U.S.C. § 3143(a)(1). Furthermore, the court is persuaded, and was persuaded at the time of sentencing, that "exceptional reasons" existed under 18 U.S.C. § 3145(c) which rendered defendant's immediate incarceration inappropriate. The presentence report on this defendant indicated that since October 3, 1991, the defendant had been released on a $5,000 unsecured bond and was complying with pretrial supervision for over 24 months with no problems. In addition, the defendant was gainfully employed up until the date of sentencing. As mentioned at the sentencing hearing, the court also finds "exceptional" the length of time it takes an individual to be transported to the facility where they are to serve their time. The court in the past received a letter from a defendant who had been ordered to surrender immediately. When he wrote the letter it was 39 days after I had sentenced him. He was designated to serve his time in a federal facility in Texas. He had been in 15 different jails for two or three days at a time, he had been on buses, airplanes and

automobiles at great expense to the U.S. Marshall Service and he was then in Tucumcari, New Mexico, a few hundred miles from his final destination. He had no idea when he would eventually get there. Bureau of Prisons officials, at a large meeting of Judges in Kentucky, asked the Judges to please not clog up their transportation system with individuals who can self-surrender to their appointed facility at no cost to the government. These are *"exceptional circumstances."*

Order dated November 18, 1993.

We agree with the Government's position. The "exceptional reasons" language in section 3145 does not relate to inadequacies in the general means of transportation of prisoners from places of holding court to places of detention. In addition, compliance with pretrial supervision and gainful employment up until the date of sentencing are not, in and of themselves, "exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c).

While we may be sympathetic with the trial court's ruling in this case as a practical one for all parties and economical to the Government, we find no statutory authority for the trial court's action in the particular circumstances here.

We reverse the order of the district court and remand for further proceedings consistent with this opinion.

Our mandate shall issue forthwith.

Members of this panel or any of them reserve the right to file a further opinion in this case.

BRIGHT, Senior Circuit Judge, concurring separately.

I write separately to comment on the problem presented by Judge O'Brien's opinion permitting the defendant, convicted of a drug trafficking offense, to voluntarily surrender at the institution to which the offender will be confined.

Judge O'Brien, in authorizing voluntary surrender, stated:

I am finding that he will not flee, that he is not a threat to himself or to the community, that his incarceration is not—immediate incarceration is not necessary in this case.

As I've said before many times, the head of the Bureau of Prisons has stood up in front of all the judges and said, 'Please don't mess up our prison system and our transportation system by making people who could report on their own go through the system.'

You also have heard many times, Mr. Reinert, my famous story of one person who I decided I would send—and I think I've got to check this letter again.

I don't want to misquote—speak. It might be a little different. But I think it was 39 days later I got a letter from him. He had been in 15 jails, and he still wasn't at the jail where he was—the prison where he was supposed to go. They were keeping him two nights in Kansas City jail and two nights he went over to St. Louis. And he was that far along, and then he went to Dallas. And he was in Dallas for four days. Then he went to Tucomtary [sic], New Mexico, is where he finally was. And it was 39 days later, and he hadn't gotten yet to where he had been assigned. So—but it's a good law, but it's not working.

Sent. Tr. at 17–19.

The judge's comments seem appropriate and suggest his ruling is extremely sound and practical. But the law is otherwise as noted by Mr. Reinert, the Assistant United States Attorney, in his comments to the judge at sentencing:

MR. REINERT: Under 18 USC Section 3143 the defendant must be detained upon entry of a sentence.

This is no shock to the defendant. In fact, his counsel and I have had extensive discussions about that that the law would require his detention as soon as he is sentenced....

. . . .

MR. REINERT: Well, Your Honor, as one brief comment it is a good law, and it is the law of this country. And even if the Bureau of Prison officials and the executive officials say we don't want it there, they don't have that authority.

The law that Congress and the people of this United States have passed says drug dealers, if they're sentenced and it's an offense that's more than ten years imprisonment, they go to prison immediately.

*Id.* at 17, 19.

I commend both the trial judge and the prosecutor for bringing this important matter before this court. While we have disposed of the appeal, the underlying problem remains.

Trial judges usually are encouraged to authorize voluntary surrender of sentenced offenders in certain cases. The Bureau of Prisons Probation policy reads:

3. *Voluntary Surrender.*

This procedure is designed to permit sentenced offenders to voluntarily report unaccompanied by a U.S. marshal to the designated institution for service of sentence.

A. *Eligibility.*

All persons who have been on pretrial release and who have complied with the conditions of their release or any offender who in the opinion of the court is deemed worthy of this procedure is eligible for consideration.

B. *Court Order.*

If the court determines the offender will be allowed to surrender under this procedure, the court may issue an order requiring the offender to surrender to custody by reporting directly to the designated institution on the date provided by the U.S. marshal.

C. *Subsistence and Transportation.*

Subsistence and transportation expenses en route to the institution should be borne by the offender. If the offender does not have sufficient funds, he may petition the court for an order directing the U.S. marshal to furnish a ticket and/or funds to enable travel by the most economical means available.

D. *Probation Officer's Responsibility.*

The probation officer should be familiar with the voluntary surrender procedures in order to respond to questions from the offender, defense counsel, or the court. When voluntary surrender seems appropriate, the probation officer should:

(1) advise the court of the offender's eligibility, and of the time necessary for institution designation and report transmittal; and

(2) make a specific recommendation to the court based on information contained in the presentence report and any other information on the defendant's conduct while on pretrial release.

*Guide to Judiciary Policies and Procedures,* Vol. X, Probation Manual, pp. 32–33.

Implementation of that policy has served practical and fiscal responsibility needs. If this policy works well for sentenced prisoners, perhaps a modified policy can apply to a drug offender who "in the opinion of the court is deemed worthy of this procedure." *Id.* Yet, Congress has legislated otherwise as to persons convicted of specified drug offenses. In such cases the "judicial officer shall order that a person who has been found guilty of [such] offense . . . be *detained.*" 18 U.S.C. § 3143(a)(2) (Supp. IV 1992) (emphasis added).

Although detention includes imprisonment, the federal system has recognized other forms of detention involving lesser restraints than incarceration. In 1987, the Federal Judicial Center issued a report by Paul J. Hofer and Barbara S. Meierhoefer entitled *Home Confinement: An Evolving Sanction in the Federal Criminal Justice System.* This article discusses confinement in the home under titles "Home Detention"[1] and

---

1. The report defines Home Detention as follows:
    More severe than curfew, home detention requires that offenders remain at home at all times, except for employment, education, treatment, or other times specified for the purchase of food or for medical emergencies. The offenders' freedom to go where they please is completely restricted, though they may remain employed, go to treatment programs, and continue to support their families and pay fees or restitution. Free time must be spent at home. Home detention, if strictly enforced, is more punishing than curfew and affords greater control over an offender's activities.

"Home Incarceration."[2] Additionally, the article observes that home confinement can utilize enforcement techniques ranging from intermittent contacts by a supervising officer to continuous electronic monitoring.

I must note that when a sentenced offender is detained and held by actual incarceration in a local jail or prison, that incarceration is at best limited, for the offender must later be conveyed by train, airplane or motor vehicle to a federal facility under custody of the U.S. Marshal's Service, at great expense to the government and often with travel delay.

Whether a modified policy, short of actual prison or jail incarceration, can and should be adopted for drug offenders subject to immediate "detention" would require further investigation by the judiciary, the probation department, the Department of Justice and the Bureau of Prisons.

The district judge may wish to make his views known to these departments and to an appropriate committee of the Judicial Conference of the United States.

In my view, the trial judge, Judge O'Brien, and the United States Attorney from the Northern District of Iowa deserve thanks for bringing this matter forward for attention.

---

Paul J. Hofer & Barbara S. Meierhoefer, *Home Confinement* (Federal Judicial Center 1987), at 6 (footnote omitted).

2. The report defines Home Incarceration as follows:

Incarceration at home is the most severe form of home confinement; the home substitutes for prison. Offenders are to remain there at all times with very limited exceptions (e.g., religious services or medical treatment). Under this condition, offenders are precluded from shopping, from working, or from having visitors outside prescribed hours. In some cases offenders may not even be allowed to go outside into their yards. The goal is to punish and maintain control over the offender. In the words of the developer of an early home incarceration program, 'We're not sending them home to have a good time.'

*Id.* (footnote omitted).