UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose Ramon GARCIA, Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

Edward Michael Powers, Defendant–Appellant.

Nos. 03–10067, 03–10071.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 29, 2003.

Filed Aug. 25, 2003.

Dennis P. Riordan, Donald M. Horgan, and Dylan Schaffer, Riordan & Horgan, San Francico, CA, attorneys for defendant-appellant Edward Michael Powers.

Matthew Pavone, San Francico, CA, attorney for defendant-appellant Jose Ramon Garcia.

Melinda L. Haag, Assistant United States Attorney, Oakland, CA, attorney for plaintiff-appellee, the United States of America.

Before: PREGERSON, REINHARDT, and GRABER, Circuit Judges.

## OPINION

REINHARDT, Circuit Judge.

■ Edward Michael Powers and Jose Ramon Garcia are former correctional officers at Pelican Bay State Prison who were convicted of conspiring with other correctional officers to organize stabbings, assaults, and intimidation of selected inmates by other inmates from July 1992 through August 1994. A jury found them guilty of violating 18 U.S.C. § 241, in that they "conspir[ed] to injure, oppress, threaten, or intimidate ... person[s] ... in the free exercise or enjoyment of ... right[s] or privilege[s] secured to[them] by the Constitution or laws of the United States." They were sentenced to 84 and 76 months in prison, respectively. The defendants moved the district court to release them on bail pending their appeal to this court. The district court denied their motion, holding that they had not shown "exceptional reasons" justifying bail, as required under 18 U.S.C. § 3145(c). In this opinion we address for the first time the meaning of the term "exceptional reasons." We vacate the district court's ruling and remand for further proceedings in light of this opinion.[1]

---

1. Although the "exceptional reasons" provision appears in a subsection that otherwise concerns actions taken by appellate courts, we agree with the other circuits to have ad-

In general, persons convicted of federal crimes are not eligible for release pending appeal unless a court finds

(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released ... and

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—

(i) reversal,

(ii) an order for a new trial,

(iii) a sentence that does not include a term of imprisonment, or

(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1). Under the Mandatory Detention Act of 1990, however, violent offenders, as well as those convicted of drug offenses with a maximum sentence of at least ten years in prison and those convicted of any offense with a maximum sentence of life imprisonment or death, are not eligible for release simply because they meet these requirements. 18 U.S.C. § 3143(b)(2). As to such offenders, Congress has imposed an additional condition: Persons subject to the 1990 Act are not eligible for release unless "it is clearly shown that there are exceptional reasons why[their] detention would not be appropriate." 18 U.S.C. § 3145(c).[2]

In the case before us, the district court found, and the government does not dispute, that the defendants meet the generally applicable requirements for eligibility for release pending appeal—those contained in § 3143(b)(1). The district court concluded that

defendants, on this record, have established that they are not flight risks and pose no danger to the community or individuals outside of the prison context for purposes of 18 USC Section 3143(b)1. Moreover, in this Court's view, the record supports a finding that the defendants' appeals are not for purposes of delay, and that said appeals raise substantial questions of law or fact likely to result in reversal or an order for a new trial.

The only disagreement concerns whether Powers and Garcia satisfy the additional condition regarding "exceptional reasons" contained in § 3145(c). The district court held that they do not.

■ In reviewing a district court's denial of release pending appeal we consider the district court's legal determinations de novo. *Cf. United States v. Handy,* 761 F.2d 1279, 1281–84 (9th Cir.1985) (applying de novo review to district court's interpretation of 18 U.S.C. § 3143). We review the district court's underlying factual determinations for clear error. *See United States v. Peden,* 891 F.2d 514, 520 (5th Cir.1989); *cf. Handy,* 761 F.2d at 1283 (referring to district court's underlying factual determinations "findings").

The primary reason that Garcia and Powers offer as "exceptional" so as to justify release is the district court's finding

---

dressed the issue that the district court has authority to determine whether there are exceptional reasons. *See United States v. Jones,* 979 F.2d 804, 805–06 (10th Cir.1992) (per curiam); *United States v. Herrera–Soto,* 961 F.2d 645, 647 (7th Cir.1992) (per curiam); *United States v. DiSomma,* 951 F.2d 494, 496 (2d Cir.1991); *United States v. Carr,* 947 F.2d 1239, 1240 (5th Cir.1991) (per curiam). *But*

*see United States v. Salome,* 870 F.Supp. 648, 652 (W.D.Pa.1994).

**2.** Section 3145(c), unlike § 3143(b), applies to defendants seeking release pending sentencing as well as to those seeking release pending appeal. The legal principles we discuss below are equally applicable in both circumstances.

that they "pose no danger to the community or individuals outside of the prison context." In support of this view they argue that the offense of which they were convicted—organizing assaults on selected inmates by other inmates—shows that they tend to violence, if at all, only when acting as prison guards, and only "for the purpose of imposing order on often riotous prison yards." Outside the prison context, they assert, they have never been accused of any wrongdoing and have no propensity for violence. Because they are no longer working in a prison facility or in any other law enforcement capacity, they believe that their conviction for a violent offense does not reflect a risk that they would constitute a danger to others if released while pursuing their appeal. As confirmation of this conclusion they note that they have been free pending and during trial and sentencing, and have shown that they behave in a non-violent manner in the outside world.

Garcia and Powers also argue that federalism concerns provide an exceptional reason justifying their release. Noting that in their case the federal government is prosecuting and incarcerating law enforcement officers of a state, they submit that "the federal-state relationship [would be] improperly strained" if they are incarcerated on the basis of an unfair trial and that the risk of such a strain would be increased if they are imprisoned before we have decided their appeal.

Garcia proposes one further "exceptional reason," which does not apply to Powers. Shortly after his conviction, Garcia was diagnosed with lymphoma and was, at least at the time the matter was presented to the district court, undergoing chemotherapy. In rejecting this reason, the district court found the record inconclusive as to Garcia's prognosis and as to the likelihood of his incapacity due to his illness or the treatment, and also noted that he could receive appropriate medical care in prison.

The district court was understandably uncertain as to the precise meaning of the additional condition that offenders subject to the provisions of § 3145(c) must meet to be eligible for release pending appeal. As the district judge correctly observed, "[t]he parameters for determining when 'exceptional circumstances' exists remains unclear because the term is not defined within the statute, nor has it been given any precise definition by way of appellate review to date." This court has, in fact, never heretofore considered the meaning of the term in a reported opinion, although individual members of the court have expressed their views on the subject while concurring in and dissenting from our order denying rehearing en banc to the denial of bail in *United States v. Koon,* 6 F.3d 561 (9th Cir.1993) (order affirming the denial of bail to police officers who physically abused a suspect). On an issue that arises so frequently and that so greatly affects the lives of defendants and their families, as well as the interests of society, we have a duty to provide some guidance, for whatever limited use it may be.[3]

This is a case in which a plain reading of the statute offers little if any help. Moreover, not only does a reading of the statute not provide much assistance with regard to the meaning of "exceptional reasons," the legislative history is also "sparse and uninformative." *United States v. DiSomma,*

**3.** Although the "exceptional reasons" provision of § 3145(c) controls the bail status of a great number of appellants, it is not surprising that it has received little attention from our court, and, indeed, from most other circuits. Appeals from bail determinations are usually decided on motions and on an expedited basis. For this reason, the panels that hear them tend to resolve the questions in simple orders or in short, unpublished dispositions, rather than in published opinions.

951 F.2d 494, 497 (2d Cir.1991). The most assistance, as the *DiSomma* court noted, *id.*, is found in a 1989 letter from the Justice Department to the Bill's sponsor, then-Senator Paul Simon. Letter from Assistant Attorney General Carol T. Crawford to Honorable Paul Simon (July 26, 1989) ("Justice Department Letter") (available as part of record in *DiSomma* ).[4] While the original proposed legislation contained no exception for extraordinary

4. Senator Simon, then Chairman of the Subcommittee on the Constitution, had written to Edward Dennis, Assistant Attorney General, Criminal Division, Department of Justice, to request comments on the proposed legislation, which did not allow for any exceptions. The purpose of the bill was "to prevent the release, on bond, of a convicted defendant who is awaiting sentencing or appeal," wrote Simon, who was "very anxious to move this bill through the Senate" and sought "expeditious review and comments" from the Department. Letter from Senator Paul Simon to Assistant Attorney General Edward Dennis (June 26, 1989) (available as part of the *DiSomma* record).

The response, which came on July 26, 1989 from Crawford, made clear that the Justice Department believed that the bill went too far and that an exception was needed for defendants who were not dangerous or a risk of flight, and who raised a substantial issue on appeal:

Dear Mr. Chairman:

This is a response to your letter to Assistant Attorney general Dennis. . . .

With respect to section 2 [of the Mandatory Detention Act], 18 U.S.C. 3143 currently provides that persons convicted, who are either awaiting sentence (if the applicable guideline calls for a sentence of imprisonment) or who have been sentenced to a term of imprisonment, be detained unless the judicial officer finds by clear and convincing evidence that the defendant is not likely to flee or pose a danger to the community *and* that the appeal raises a substantial question of law or fact likely to result in a reversal, an order for a new trial, or a sentence other than imprisonment. Under section 2 . . . this provision would be modified so as to mandate detention . . . if the offense was a crime of violence, a controlled substance offense for which the maximum penalty was ten years or more, or an offense that carries a maximum penalty of life imprisonment or death.

We are not aware of a significant problem, under existing section 3143, with judges ordering the release pending sentence or appeal of persons convicted for offenses in the above categories. Such persons are presumptively dangerous, and in our experience are unlikely to meet the standards set forth in section 3143 for release. Nonetheless, we support the thrust of section 2 to strengthen the law to make the possibility of an inappropriate release order even less likely.

We are, however, somewhat concerned about the mandatory nature of the proposed amendment. While confinement will be the proper result in the vast majority of cases of persons convicted for crimes of violence and serious drug offenses, there may be rare instances in which release, under appropriate conditions, would be proper. For example, suppose a situation in which the convicted defendant does not pose either a danger to the community if released or a risk of flight, and in which the appeal raises a substantial question of law (e.g. an elderly man convicted under 18 U.S.C. 1111 of the mercy killing of his spouse, who has lived in the community all his life without prior incident, and who is challenging the applicability of the federal murder statute to mercy killings, a question of first impression in the circuit). The same might be true of even a convicted drug dealer who, because of wounds incurred during his capture, was temporarily incapacitated and thus not likely to commit further crimes or to flee, and whose appeal raised a novel and difficult search or seizure question on which the conviction will stand or fall. In short, while we have no doubt of Congress's power to mandate the detention of persons convicted of violent crimes or drug offenses, whose crimes call for a sentence of imprisonment, we believe that, as a matter of policy, some mechanism should exist so that, in the extraordinary case, the court could order release (under whatever conditions were deemed necessary). We would be pleased to work with the Subcommittee and its staff to develop language to implement this concept, if the Chairman so desires.

Justice Department Letter.

circumstances, in its letter the Justice Department proposed creating one, and offered two hypothetical situations in which it should apply. Those situations both involved defendants who were elderly or injured and who raised legal issues not previously decided by the courts to which they appealed. In the Justice Department's view it appears that exceptional reasons exist where, due to a truly unusual circumstance or combination of circumstances, it would be unreasonable, despite the general policy favoring incarceration contained in § 3145(c), to order a particular defendant to be incarcerated pending appeal. *Cf. DiSomma,* 951 F.2d at 497 (noting that Justice Department Letter describes circumstances that are "out of the ordinary"); *Koon,* 6 F.3d at 564 n. 8 (Reinhardt, J., dissenting from denial of rehearing en banc) (noting that Justice Department Letter describes circumstances that "might make detention unduly harsh").

Court decisions addressing and applying the "exceptional reasons" provision have expressed varying views. *See, e.g., United States v. Mostrom,* 11 F.3d 93, 94 (8th Cir.1993) (per curiam) (holding that it did not constitute exceptional reasons that the Bureau of Prison's transportation system was generally overwhelmed and could not therefore transport the defendant efficiently to prison); *United States v. Herrera–Soto,* 961 F.2d 645, 647 (7th Cir.1992) (per curiam) (finding no exceptional reasons where there was "nothing out of the ordinary about the circumstances of th[e] case"); *DiSomma,* 951 F.2d at 497–98 (stating that "an unusual legal or factual question can be sufficient ... [or, o]n the other hand, a merely substantial question may be sufficient, in the presence of one or more remarkable and uncommon factors," and affirming order of release where defendant "mount[ed] a direct and substantial challenge on appeal to the factual underpinnings of the element of violence upon which his sole conviction st[oo]d[ ] or

f[e]ll[ ]" and where there was no risk of flight or danger to the community); *United States v. Green,* 250 F.Supp.2d 1145, 1149 (E.D.Mo.2003) (concluding that accumulation of "numerous common circumstances ... alone would not constitute an exceptional reason"); *United States v. Charger,* 918 F.Supp. 301, 303–04 (D.S.D. 1996) (finding exceptional reasons where young first-time offender was in need of guidance available to him at his father's home and was participating in out-patient alcohol treatment, such that to imprison him "would be counterproductive .... [and] would harm defendant and the interests of society"); *United States v. Cantrell,* 888 F.Supp. 1055, 1057–58 (D.Nev. 1995) (ordering release of Native American defendant who was subject to dual prosecution by federal and tribal courts and was participating in substance abuse program); *United States v. Salome,* 870 F.Supp. 648, 653–55 (W.D.Pa.1994) (declining to order release because defendant had not shown that his situation was "out of the ordinary" or that his detention would be "unduly harsh"); *United States v. Hill,* 827 F.Supp. 1354, 1356–58 (W.D.Tenn.1993) (finding exceptional reasons where successful appeal was likely because the district court believed that the evidence was insufficient under circuit precedent to support conviction, but that the district court lacked the authority to enter *sua sponte* a judgment of acquittal).

As these cases indicate, a wide range of factors may bear upon the analysis. By adopting the term "exceptional reasons," and nothing more, Congress placed broad discretion in the district court to consider all the particular circumstances of the case before it and draw upon its broad "experience with the mainsprings of human conduct." *Mozes v. Mozes,* 239 F.3d 1067, 1073 (9th Cir.2001) (internal quotation marks omitted). While we offer some guidance today, we place no limit on the

range of matters the district court may consider. Rather, the court should examine the totality of the circumstances and, on the basis of that examination, determine whether, due to any truly unusual factors or combination of factors (bearing in mind the congressional policy that offenders who have committed crimes of violence should not, except in exceptional cases, be released pending appeal) it would be unreasonable to incarcerate the defendant prior to the appellate court's resolution of his appeal.

█ To illustrate how the term "exceptional reasons" may be applied we will consider some of the factors that alone or in combination with others may qualify under the statute. For example, one exceptional circumstance that might justify release under § 3145(c) would be that the defendant's criminal conduct was aberrational. A defendant with no prior history of violence may have acted violently, but uncharacteristically, in reaction to an unusually provocative circumstance. Such a defendant may be guilty of a violent crime, and yet may not be the type of violent person for whom Congress intended the mandatory detention rule. Moreover, if the district court finds that the defendant led an exemplary life prior to his offense and would be likely to continue to contribute to society significantly if allowed to remain free on bail, these factors would militate in favor of finding exceptional reasons.

█ The nature of the violent act itself may also be significant. As noted above, the Act demands exceptional reasons only for those convicted of violent crimes, drug offenses for which the maximum penalty is at least ten years in prison, and offenses for which the maximum penalty is life imprisonment or death. Various factors may lead the district court to believe that the particular act committed by the defendant, while falling within one of these categories, is sufficiently dissimilar from the others in that category to warrant a finding of "exceptional reasons." Under appropriate circumstances, for example, if the act was violent, but did not involve any specific intent—or if it did not involve any threat or injury to persons—the district court might find that in some cases the general rule in favor of detention is less likely to be applicable. Similarly, if the act of violence or the circumstances surrounding the act were highly unusual—the Justice Department Letter offers the example of a mercy killing—exceptional reasons might be more likely to exist.

The length of the prison sentence—both the maximum and the sentence imposed—may also be relevant, for several reasons. First, the length of the sentence may be a proxy for the seriousness of the crime. Second, the primary purpose of the Mandatory Detention Act—to incapacitate violent people—is only weakly implicated where the sentence imposed is very short, because regardless of whether the defendant is released pending appeal, he will soon be free. Third, in such circumstance, the defendant could be forced to serve most or all of his sentence before his appeal has been decided. Incarcerating such a defendant immediately upon conviction could substantially diminish the benefit he would ordinarily receive from an appeal. *See United States v. McManus,* 651 F.Supp. 382, 384 (D.Md.1987) ("There seems little point to an appeal if the defendant will serve his time before a decision is rendered.").

The district court might also consider circumstances that would render the hardships of prison unusually harsh for a particular defendant. Chief among such circumstances is a sufficiently serious illness or injury. A severely ill or injured defendant might have exceptional reasons even if the requisite medical treatment is available in prison. District judges may con-

sider such factors as the desirability of maintaining an uninterrupted course of treatment while a defendant remains in the care of a particular physician who is providing individual medical supervision to the patient. Although a defendant may ultimately be forced to serve a prison sentence regardless of his health, it may be unreasonable to force him to begin his sentence prior to the resolution of his appeal. Nor do we foreclose the possibility of finding exceptional circumstances in a case in which incarceration would impose exceptional risks on a defendant involving his physical or mental well-being—risks that might arise as a result of the nature of his crime or even as a result of his possessing certain physical, psychological, or other characteristics.

The nature of the defendant's arguments on appeal may also be considered by the district court in determining whether exceptional reasons exist. When there appears to be an unusually strong chance that the defendant will succeed in obtaining a reversal of his conviction on appeal he may be able to demonstrate exceptional reasons for delaying the commencement of his sentence. *See Herrera–Soto*, 961 F.2d at 647 (stating that "a legal issue may be of such weight that it forms the basis of an 'exceptional reason' against detention" while finding no such issue in defendant's appeal); *Hill*, 827 F.Supp. at 1356–58 (ordering release because of exceptionally strong issues for appeal). As an example, we need look only as far as the case of the sex offenders whose convictions were recently invalidated by *Stogner v. California*, —— U.S. ——, 123 S.Ct. 2446, 156 L.Ed.2d 544 (2003). A perceptive trial judge might well have recognized the distinct possibility that the convictions of those offenders would ultimately be overturned on the ground that the retroactive extension of an expired statute of limitations is unconstitutional. Detaining such defendants without the possibility of bail pending appeal might be unreasonable, in part because on appeal imprisonment for any period could well be determined to be unjustified.[5] If one or more issues raised on appeal has not previously been decided by the court to which the petitioner will appeal, that may, in at

---

5. At first glance, it might appear that a strong appeal is a threshold requirement under 18 U.S.C. § 3143(b)(1)(B), and that to consider this factor an "exceptional reason" under § 3145(c) would introduce a redundancy. However, the relevance of the § 3143(b)(1)(B) requirement must be considered in the light of our court's interpretation of that requirement. *United States v. Handy*, 761 F.2d 1279, 1280–83 (9th Cir.1985); *see United States v. Smith*, 793 F.2d 85, 89 (3d Cir.1986). In *Handy* we held that an issue is substantial if it is "fairly debatable" or "fairly doubtful," that is, "of more substance than would be necessary to a finding that it was not frivolous." *Handy*, 761 F.2d at 1283 (internal quotations marks and citations omitted). The second part of the requirement—that the question be likely to result in reversal, a new trial, a non-prison sentence, or a sentence reduced to less than the time that would be served by the end of the appeal process—concerns only the *type of question* that meets the requirement; it does not involve assessing the likelihood that a reversal will occur in the particular case. *Id.* at 1280. (When *Handy* was decided, the provision did not state that the requirement could be filled by a likelihood of reduction to a non-prison sentence or a sentence less than the time that would be served by the end of the appeal process. *See id.* at 1280 (citing 18 U.S.C. § 3143(b) (1982)). The amendments to the statute since then affect neither the analysis of *Handy* nor our analysis today.) The defendant, in other words, need not, under *Handy*, present an appeal that will likely be successful, only a non-frivolous issue that, if decided in the defendant's favor, would likely result in reversal or could satisfy one of the other conditions. Because under § 3143(b)(1)(B) a defendant need not show a likelihood of success on appeal, a defendant who *does* show such likelihood goes well beyond the threshold requirement. There is therefore no redundancy in considering likelihood of success as a factor in determining whether there are exceptional reasons justifying release under § 3145(c).

least some cases, also weigh in favor of finding exceptional reasons, as the Justice Department Letter reflects. Similarly, if the appellate issues are highly unusual in other respects, a district court may consider that factor when evaluating all of the circumstances. In this connection, we note that in *DiSomma*, the Second Circuit held that exceptional reasons existed because on appeal the defendant questioned the violent nature of his act, and violence was both an element of the offense and the basis for the application of the Mandatory Detention Act. 951 F.2d at 498 (finding exceptional reasons on basis of nature of issue on appeal).

The district court's familiarity with the full record will enable it, when necessary, to undertake a searching and informed evaluation of all the circumstances of the case, a process that an appellate court would ordinarily be unable to undertake until after the appeal is completed. We reiterate that the factors we mention here are by no means exclusive. For example, the district court may also consider, as the Justice Department Letter suggests, whether because of particular circumstances the defendant is *exceptionally* unlikely to flee or to constitute a danger to the community if he is permitted to remain free pending his appeal. A wholly incapacitated defendant, for example, might be entirely unable either to act violently or to abscond. Notably, as we have suggested, the absence of any possible future dangerousness or flight is most likely to be present in cases in which other mitigating factors, such as a sufficiently serious illness

or injury, also exist. In such cases, a district judge, after examining all the circumstances may well find cause to conclude that it would be unreasonable for the defendant to be incarcerated pending appeal.[6]

The district court may also consider whether the defendant was unusually cooperative with the government. *See United States v. Carretero*, 1999 WL 1034508, at *8 (N.D.N.Y. Nov.4, 1999) (unpublished decision). Although such cooperation may result in a substantial societal benefit, it may also render the defendant exceptionally vulnerable to injury in prison. Such vulnerability may tend to make it unduly harsh to require incarceration while an appeal is pending. We do not suggest, of course, that all vulnerable persons are entitled to have the imposition of their sentences delayed. This is simply a factor the district judge may consider, along with all others, when determining whether exceptional reasons exist.

■ Among the factors raised by Powers and Garcia there is one—the supposed "federalism concerns" arising from the defendants' status as state officers at the time of the events for which they were convicted—that we reject as a matter of law. No "strain" arises between sovereigns when the federal government prosecutes and convicts a state law enforcement officer for violating the rights of the prisoners in their charge. The defendants' novel assertion to the contrary would, if accepted, create a special dispensation available only to state-employed criminals. Congress did not intend that result, and it is without basis in the Constitution.[7]

---

**6.** Although danger to the community and flight risk are threshold factors under § 3143(b)(1)(A), in that context the court considers only whether the defendant has proved by clear and convincing evidence that he is "not likely" to flee or pose a danger to others. There is therefore no redundancy in considering whether exceptional circumstances relat-

ed to those factors, meeting a higher standard of certainty, could constitute exceptional reasons.

**7.** We do not suggest, however, that federalism could never be a concern. We do not address, for example, a circumstance in which state law or policy affirmatively authorized or

The defendants also assert that because they are no longer prison guards they should not be considered dangerous. The district court did not address this argument adequately, because it believed that a lack of dangerousness could never be relevant to the exceptional reasons inquiry. As discussed above, however, an exceptionally low risk of danger may be relevant, under *some* circumstances, for example, where a defendant can show that his violent act was highly aberrational. Nevertheless, here, we must add that, as with their federalism concerns, the defendants' argument regarding their exceptionally low risk of violence appears to have little merit. This is not a case in which a defendant uncharacteristically committed a single act of violence in reaction to a rare or unexpected circumstance or as a result of some extraordinary happenstance. To the contrary, the defendants' acts of violence appear to have been both carefully planned and repeated over a period of years. These factors would appear to show that the defendants have a significantly violent nature, thus precluding a finding that their conduct was aberrational, and severely weakening their contention that they would clearly pose no danger at all to the community. We will, however, leave it to the district court initially to make the overall judgment in this case.

On remand the district court should allow the parties to present additional evidence and argument and to amend their motions in light of this opinion; in particular, Garcia may wish to develop a fuller record with regard to his illness, in light of our holding that detaining a seriously ill defendant pending appeal may be unduly harsh, even where the government may be able to provide adequate medical care. If Garcia's illness is indeed sufficiently grave,

or if his course of treatment is such that detention should properly be withheld pending appeal, he may be able to demonstrate exceptional reasons justifying release, even if Powers cannot.

In conclusion, we must emphasize that in all cases governed by § 3145(c), the exception applies only where justified by exceptional circumstances. Hardships that commonly result from imprisonment do not meet the standard. The general rule must remain that conviction for a covered offense entails immediate incarceration. Only in truly unusual circumstances will a defendant whose offense is subject to the statutory provision be allowed to remain on bail pending appeal.

For the foregoing reasons we remand to the district court for further proceedings in accordance with this opinion.

VACATED and REMANDED.

---

directed the acts for which the defendants were convicted under federal law. Assaults by guards on prisoners and by peace officers on civilians are, however, contrary to both federal and state laws.